IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MEGAN B.,[1] | ) |
|       Plaintiff, | ) ) ) No. 18 C 1836 |
| v. | ) ) Magistrate Judge |
| ANDREW SAUL, Commissioner of Social Security,[2] | ) Maria Valdez ) ) |
|       Defendant. | ) ) |

### MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Megan B.'s claim for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's request to reverse the decision of the Commissioner is granted in part and denied in part, and the Commissioner's motion for summary judgment [Doc. No. 24] is denied.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by her first name and the first initial of her last name.

[2] Andrew Saul has been substituted for his predecessor pursuant to Federal Rule of Civil Procedure 25(d).

## BACKGROUND

### I. PROCEDURAL HISTORY

On May 29, 2014, Plaintiff filed a claim for DIB, alleging disability since April 18, 2013 due to back pain and obesity. The claim was denied initially and upon reconsideration, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on October 25, 2016. Plaintiff personally appeared and testified at the hearing and was represented by counsel. Vocational expert Glee Ann Kehr also testified.

On May 4, 2017, the ALJ denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

### II. ALJ DECISION

Plaintiff's claim was analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of April 18, 2013. At step two, the ALJ concluded that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine and obesity; and non-severe impairments of hand numbness and depression. The ALJ concluded at step three that her impairments, alone or in combination, do not meet or medically equal a

Listing. Before step four, the ALJ determined that Plaintiff retained the Residual Functional Capacity ("RFC") to perform sedentary work with the following additional limitations: the ability to alternate to sitting for ten minutes after every forty-five minutes of standing or walking, and alternate to standing for ten minutes after every forty-five minutes of sitting; occasional kneeling, crouching, and crawling, and climbing ramps and stairs; never stooping or climbing ladders, ropes, or scaffolds; and allowed to wear a back brace at work up to 100% of the time. At step four, the ALJ concluded that Plaintiff would be capable of performing her past relevant work as an administration clerk-secretary, leading to a finding that she is not disabled under the Social Security Act.

## DISCUSSION

### I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a Plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the Plaintiff presently unemployed? (2) Does the Plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the Plaintiff unable to perform her former

3

occupation? and (5) Is the Plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the Plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The Plaintiff bears the burden of proof at steps 1-4. *Id.* Once the Plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the Plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the

ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a Plaintiff, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a Plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

5

### III. ANALYSIS

Plaintiff argues that the ALJ's decision was in error for several reasons, including: (1) failure to weigh medical opinions consistent with the treating physician rule; (2) determining the RFC using his own lay opinion and without relying on record evidence; and (3) failing to properly evaluate Plaintiff's symptoms.

#### A. **Treating Physician Rule**[3]

Plaintiff first maintains that the ALJ failed to follow the "treating physician rule" by not appropriately weighing the opinions of her treating physicians, Drs. Sonal Parikh and Mohamed Khaleel. An ALJ must give controlling weight to a treating physician's opinion if the opinion is both "well-supported" and "not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. § 404.1527(c); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). The ALJ must also "offer good reasons for discounting" the opinion of a treating physician. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations omitted); *Scott*, 647 F.3d at 739; *see also Israel v. Colvin*, 840 F.3d 432, 437 (7th Cir. 2016) ("A contradictory opinion of a non-examining physician does not, by itself, suffice as a justification for discounting the opinion of the treating physician."). The regulations

---

[3] The Social Security Administration has modified the treating-physician rule to eliminate the "controlling weight" instruction. *See* 20 C.F.R. § 404.1520c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) ..., including those from your medical sources."). However, the new regulations apply only to disability applications filed on or after March 27, 2017. *Compare* 20 C.F.R. § 404.1527 ("For claims filed (see § 404.614) before March 27, 2017, the rules in this section apply."), *with* 20 C.F.R. § 404.1520c ("For claims filed (see § 404.614) on or after March 27, 2017, the rules in this section apply."). Plaintiff's application in this case was filed in 2014, and therefore the ALJ was required to apply the treating physician rule when deciding Plaintiff's application.

6

require the ALJ to consider a variety of factors, including: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination; (3) the physician's specialty; (4) the types of tests performed; and (5) the consistency and support for the physician's opinion. *See* 20 C.F.R. § 404.1527(c). Even if a treater's opinion is not given controlling weight, an ALJ must still determine what value the assessment does merit. *Scott*, 647 F.3d at 740; *Campbell*, 627 F.3d at 308.

Dr. Parikh, a family physician, completed a Spinal Questionnaire in June 2014. She stated that she had been seeing Plaintiff every one to four months for nearly two years. Her diagnosis was of chronic back pain and lumbar radiculopathy status post two laminectomies and opined that Plaintiff was permanently disabled. In the section asking the physician to identify the positive clinical findings for her diagnosis, Dr. Parikh noted Plaintiff had lumbar tenderness and spasm, and sensory loss at the L-5 level. She wrote "none" next to the section for describing other clinical signs or comments. The diagnostic test results listed on the questionnaire were an x-ray and an MRI of her lumbar spine, showing a herniated disc at L-5.

Plaintiff's symptoms were described as severe back pain when sitting or standing for a long time, radiating to her legs, sometimes with leg numbness. Dr. Parikh estimated that in a workweek, Plaintiff had the RFC to occasionally lift or carry five to ten pounds; sit for zero to one hour in an eight-hour day; and stand/walk for three out of eight hours. She could not push, pull, kneel, bend, or stoop. Plaintiff would not be able to sit continuously and would have to get up and

7

move for fifteen minutes every half hour, and she was also expected to require unscheduled breaks to rest for fifteen minutes every thirty minutes and would likely be absent from work more than three times a month as a result of her impairment. Plaintiff's pain was said to be severe enough to constantly interfere with her attention and concentration. Her medications were Motrin, hydrocodone, calcium, and a depo shot; no side effects were reported. Plaintiff's treatment included the two laminectomies (which took place in 1999 and 2010), physical therapy once, and an epidural steroid injection. Dr. Parikh did not consider Plaintiff to be a malingerer.

Dr. Khaleel, a pediatrician and family medicine specialist, completed a Chronic Pain RFC Questionnaire on September 17, 2014,[4] and answered a set of questions in 2016. The 2014 questionnaire was completed after only two visits, the second of which had occurred six months earlier. He diagnosed Plaintiff with low back pain and hip pain, with a fair prognosis. Dr. Khaleel estimated Plaintiff had the RFC to walk one city block without rest or severe pain; sit for only one hour at a time and stand for only two hours at a time; sit for a total of less than two hours and stand for about two hours total in a workday; lift less than ten pounds occasionally; occasionally climb stairs, rarely crouch/squat; and never twist, stoop, or climb ladders. Plaintiff was expected to need periods of walking around for fifteen minutes every thirty minutes during the workday; every two hours, she would require a thirty to forty-five-minute break to lie down; and she would likely be

---

[4] The ALJ mistakenly attributed the September 2014 report to Dr. Parikh, but that error had no bearing on the decision.

8

absent from work more than four days per month. She would also need to wear a back brace. Relevant objective signs were reduced range of motion and tenderness in the lower back. The pain was expected to frequently interfere with Plaintiff's concentration needed to perform even simple work tasks. Side effects of medication was identified as drowsiness.

     At counsel's request in 2016, Dr. Khaleel answered several questions about Plaintiff's impairments, treatment, and prognosis. He stated that she had experienced back pain since age seventeen and underwent laminectomy and discectomy procedures in 2010. She had undergone physical and occupational therapy and taken pain medication without improvement, and her prognosis was considered poor to fair. Dr. Khaleel stated that Plaintiff said she experienced pain with sitting, standing, and physical activity. (R. 550.) When Plaintiff tried returning to her former job, she experienced back pain radiating to her legs, and on several occasions her body would "lock up" on her. The pain was not relieved through medication, and it increased throughout the day and interfered with her ability to do her job. (R. 551.) Dr. Khaleel also concluded that "[i]f this is her subjective pain experience she may not be able to perform a sitting job." (R. 551.) The objective findings supporting Plaintiff's complaints were disc degeneration and disc bulging with impingement on nerve structures in her lumbar spine. Dr. Khaleel noted that Plaintiff had experienced minimal success with neurosurgery, and that her subsequent treatment with physical therapy and pain management could be considered routine and conservative.

9

The Court concludes that the ALJ did not adequately consider the relevant factors when deciding to give little weight to the opinions of Drs. Parikh and Khaleel. The ALJ noted that Dr. Parikh and Dr. Khaleel are both family physicians, but each was Plaintiff's treating physician for a significant period of time, and she went for regular visits. The ALJ gave the opinions little weight because the limitations seemed to be almost exclusively based on Plaintiff's subjective complaints rather than an evaluation of the medical record. However, that is not a basis by itself to discredit a physician's report describing pain. *See Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015) ("The administrative law judge's most serious error . . . is her belief that complaints of pain, to be credible, must be confirmed by diagnostic tests."); *Adaire v. Colvin*, 778 F.3d 685, 688 (7th Cir. 2015) (finding that the ALJ had made "the fundamental error that 'subjective' statements are to be given zero weight"); *Glynn v. Berryhill*, No. 17 C 4312, 2018 WL 3785444, at *5 n.4 (N.D. Ill. Aug. 9, 2018) ("The ALJ may not reject opinions wholesale without specifying which opinions he found were based entirely on noncredible reports from the claimant, and why he reached that conclusion."). By failing to give adequate reasons for finding Plaintiff's subjective allegations of pain to be incredible, the ALJ did not build a logical bridge between the evidence and his conclusions that could be evaluated by this Court. *See Glynn*, 2018 WL 34785444, at *5 n.4.

    **B.**    <u>Lay Opinion</u>

Plaintiff next contends that the ALJ substituted his lay opinion for medical evidence when reaching his RFC determination.

10

Consulting physician Dr. Charles Carlton examined Plaintiff on September 20, 2014 and had access to a number of her medical records including her November 2012 MRI a 2013 neurosurgical record. Plaintiff was noted to be an obese individual, with a BMI of 31. Plaintiff had a normal gait and was able to walk more than fifty feet without using an assistive device. She was able to get into a full squatting position but required some assistance resuming a standing position due to reported pain in her back, hips, and legs. During the examination, Plaintiff exhibited a full painless range of motion in all joints except her hips and knees and some decreased range of motion of her lumbar spine. She reported some tenderness to palpation in the paraspinal muscles throughout the low back area.

Plaintiff reported to Dr. Carlton that she had persistent pain in her back, hips, and legs, especially with prolonged walking, standing, or sitting. She also had occasional pain that referred down her right leg to her foot. She had pain in her low back when either leg was elevated 30 degrees from the table but no pain or numbness referred down her leg during that maneuver. In what he described as a conservative estimate of her functional ability based on his examination and his review of her medical records, Dr. Carlton stated that Plaintiff could safely sit and stand, walk greater than fifty feet without an assistive device, and lift twenty pounds. Based on Dr. Carlton's report and Plaintiff's medical records, non-examining DDS physicians concluded that Plaintiff could perform work at the light level with no additional restrictions.

11

As discussed above, the ALJ gave little weight to the opinions of Drs. Parikh and Khaleel that Plaintiff lacked the functional capacity to perform even sedentary work. However, the ALJ also gave little weight to the opinions of the DDS consultants who opined that Plaintiff could work at the light level. He thought that a light RFC was inappropriate given the "consistent pattern of treatment for her back, along with little increase in function from physical therapy," (R. 20), and that a sedentary RFC with additional restrictions better reflected Plaintiff's functional capacity. Specifically, the ALJ concluded that Plaintiff's impairments could be accommodated with a modified sit/stand option, whereby she could sit for ten minutes after forty-five minutes standing/walking and vice versa.

Plaintiff argues that the ALJ lacked an evidentiary basis for his RFC finding because by rejecting all of the medical opinions and finding Plaintiff could perform sedentary work with the sit/stand option, the ALJ filled an evidentiary gap by relying on his own lay opinion rather than medical evidence. The Court agrees that the ALJ's RFC determination was not supported by substantial evidence, and remand is necessary. The ALJ apparently believed that the RFC he chose reflected a middle ground between the two competing factions of medical opinions – unrestricted light work on one side, and frequent need to lie down, *i.e.*, less than sedentary, on the other. But in his effort to find a consensus, the ALJ crafted an RFC that is unsupported by any medical evidence or opinion. *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) ("[A]n ALJ must not substitute his own judgment for a

12

physician's opinion without relying on other medical evidence or authority in the record.").

Based on its conclusion that remand is necessary for the above reason, the Court need not explore in detail the remaining errors claimed by Plaintiff. The Court emphasizes that the Commissioner should not assume these issues were omitted from the opinion because no error was found. Indeed, the Court admonishes the Commissioner that, on remand, special care should be taken to ensure that Plaintiff's symptoms are fully analyzed under the regulations, particularly with respect to her activities of daily living.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's request to reverse the decision of the Commissioner is granted in part and denied in part, and the Commissioner's cross-motion for summary judgment [Doc. No. 24] is denied. The Court finds that this matter should be remanded to the Commissioner for further proceedings consistent with this Order.

**SO ORDERED.**  **ENTERED:**

*Maria Valdez*

**DATE:** **June 10, 2020**  _____
 **HON. MARIA VALDEZ**
 **United States Magistrate Judge**

13